NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**DARIUS CANUTO AND TERESITA A. CANUTO, PARENT(S) OF, D. A. C., A MINOR,**
*Petitioners-Appellants*

**v.**

**SECRETARY OF HEALTH AND HUMAN SERVICES,**
*Respondent-Appellee*

---

2016-2096

---

Appeal from the United States Court of Federal Claims in No. 1:04-vv-01128-RJY, Senior Judge Robert J. Yock.

---

Decided: October 4, 2016

---

DARIUS CANUTO, TERESITA A. CANUTO, D.A.C., Northridge, CA, pro se.

VORIS EDWARD JOHNSON, JR., Vaccine/Torts Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent-appellee. Also represented by BENJAMIN C. MIZER, RUPA BHATTACHARYYA, CATHERINE E. REEVES.

---

Before O'MALLEY, BRYSON, and STOLL, *Circuit Judges.*

PER CURIAM.

Petitioners Darius and Teresita Canuto ("the Canutos"), on behalf of their son, D.A.C., seek an award under the National Childhood Vaccine Injury Act, 42 U.S.C. §§ 300aa-1 to -34 (2012), as compensation for his autism, which they allege was caused by his receiving a series of diphtheria, tetanus, and pertussis ("DTP") vaccinations. A Special Master of the United States Court of Federal Claims found that the Canutos had not established under any credible medical theory that D.A.C.'s autism had been caused by the DTP vaccinations and denied the Canutos' claim. *See Canuto v. Sec'y of Health & Human Servs.*, No. 04-1128V, 2015 WL 9854939 (Fed. Cl. Sp. Mstr. Dec. 18, 2015). After a thorough consideration of the record, the United States Court of Federal Claims affirmed the Special Master's decision and denied the Canutos' motion for review. *See Canuto v. Sec'y of Health & Human Servs.*, No. 04-1128V, 2016 WL 2586510 (Fed. Cl. Apr. 18, 2016). We *affirm*.

## BACKGROUND

The relevant facts are primarily those found by the Special Master in his detailed decision, issued December 18, 2015. *See Canuto*, 2015 WL 9854939, at *6–16. D.A.C. was born on July 17, 2000, in Bocaue, Philippines. His pediatrician noted on early visits that D.A.C. was a "well baby." D.A.C. received several vaccines in the Philippines, in particular two doses of "Tritanrix" (combined DTP and hepatitis B). In 2001, after relocating to Los Angeles, California, D.A.C. received additional vaccines, including combined diphtheria, tetanus, and acellular pertussis ("DTaP") and haemophilus influenza type B ("Hib").

At his one-year check-up on August 3, 2001, D.A.C.'s pediatrician noted that he had poor weight gain and was "lagging behind" on speech and language milestones. The pediatrician found D.A.C. negative for adverse vaccine reactions. D.A.C.'s medical records give no indication of any serious injury or medical conditions over the next several years; however, it is clear that D.A.C. continued to struggle developmentally. In late 2003, he was diagnosed with severe to profound expressive and receptive language disorder.

On March 15, 2004, the Canutos took D.A.C. to a developmental behavioral pediatrician who diagnosed D.A.C. with autism. Despite a chronological age of 44 months, his linguistic skills tested at a developmental age of 30.4. He displayed delayed language skills, difficulty interacting with peers, limited play skills, and repetitive behavior such as tightening his fists and echoing speech. In March 2006, a psychoeducational assessment of D.A.C. confirmed his prior diagnosis of autism.

The Canutos, on behalf of D.A.C., filed a Short-Form Autism Petition for Vaccine Compensation ("Petition") on July 6, 2004, thus joining the Omnibus Autism Proceedings ("OAP") and adopting the Master Autism Petition for Vaccine Compensation. After the OAP test cases became final, the Canutos pursued their case individually. On December 18, 2005, the Special Master issued his decision denying the Canutos' claim as lacking any credible theory of causation between the covered vaccines administered and D.A.C.'s condition. After their motion for review was denied by the Court of Federal Claims, the Canutos appeal to this court, alleging that the Special Master failed to consider certain relevant evidence.

We have jurisdiction under 42 U.S.C. § 300aa-12(f).

STANDARD OF REVIEW

In cases brought under the Vaccine Act, we review a ruling by the Court of Federal Claims de novo, applying the same standards it applies when reviewing decisions of the Special Master. *LaLonde, v. Sec'y of Health & Human Servs.*, 746 F.3d 1334, 1338–39 (Fed. Cir. 2014) (citing *Moberly ex rel. Moberly v. Sec'y of Health & Human Servs.*, 592 F.3d 1315, 1321 (Fed. Cir. 2010)). We review legal determinations to ensure they are in accordance with accepted law, and we do not disturb findings of fact unless they are arbitrary or capricious. *See id.* at 1339. As this court has said on more than one occasion in this context:

> [I]t is not . . . the role of this court to reweigh the factual evidence, or to assess whether the special master correctly evaluated the evidence. And of course we do not examine the probative value of the evidence or the credibility of the witnesses. These are all matters within the purview of the fact finder.

*Munn v. Sec'y of Health & Human Servs.*, 970 F.2d 863, 871 (Fed. Cir. 1992). The reviewing court should look to see whether "the [S]pecial [M]aster has considered the relevant evidence of record, drawn plausible inferences and articulated a rational basis for the decision." *Hines v. Sec'y of Health & Human Servs.*, 940 F.2d 1518, 1528 (Fed. Cir. 1991). If so, the ruling must stand.

DISCUSSION

To receive compensation under the Vaccine Act, a petitioner must demonstrate, by a preponderance of the evidence, that the vaccinated person received a covered vaccine and either: (1) suffered an injury, condition, or a significant aggravation of a preexisting injury or condition listed in the Vaccine Injury Table within the requisite time frame; or (2) suffered an injury, condition, or signifi-

cant aggravation of a preexisting injury or condition *not* listed in the Table "but which was *caused*" by a covered vaccine. 42 U.S.C. §§ 300aa-11(c)(1)(C) (emphasis added), 300aa-14; 42 C.F.R. § 100.3 (2011); *LaLonde*, 746 F.3d at 1338.

For a condition that is not listed in the table, the petitioner must prove their claim by a "preponderance of the evidence"—they "must do more than demonstrate a 'plausible' or 'possible' causal link between the vaccination and the injury." *W.C. v. Sec'y of Health & Human Servs.*, 704 F.3d 1352, 1356 (Fed. Cir. 2013) (citing *Moberly*, 592 F.3d at 1322). To prove actual causation, it is the petitioner's burden to demonstrate:

> by preponderant evidence that the vaccination brought about [the] injury by providing: (1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of a proximate temporal relationship between vaccination and injury.

*Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274, 1278 (Fed. Cir. 2005). A petitioner must prove their theory of causation by medical literature or by the medical opinion of an expert witness. *Id.* at 1279–80. If the petitioner meets this burden, they are entitled to recover under the Vaccine Act unless the government is able to prove—by preponderant evidence—that the injury was caused by factors unrelated to the vaccination. *Id.* at 1278.

The Canutos' Informal Brief on appeal alleges that the Special Master failed to consider certain evidence which would have, if properly addressed, proved their theory of causation between vaccines and autism. The evidence submitted by the Canutos in this case consisted chiefly of medical records, medical literature, parental

testimony, and the expert report of Dr. Levin.  The Special Master, in his decision, addressed each category of evidence in turn, weighed all available evidence, and applied the *Althen* test to determine whether the Canutos had met their burden under the law.  The Special Master found that the Canutos failed to satisfy any of the *Althen* test's three prongs.

Examining the Canutos' testimonial evidence, the Special Master found significant conflict with the history contained in the medical records.  The Canutos alleged by way of affidavits that D.A.C. was allergic to the vaccinations he received, causing him to develop seizures arising from adverse reactions to the vaccinations as early as eight months of age.  The Special Master found no contemporaneous indication in the submitted medical records, however, of an adverse reaction to any of the administered vaccines.  On the contrary, pediatricians repeatedly noted that D.A.C. had no adverse reactions.  The Special Master also found no contemporaneous references in the medical records to D.A.C.'s alleged seizures, or any references to muscle spasms or other seizure-like behavior.  The Special Master noted that, for D.A.C.'s pediatricians to "not recognize and not record a description of a seizure in one instance would be unusual enough," but at least two of the alleged seizures occurred around the same time D.A.C. visited the pediatrician for sick visits.  *Canuto*, 2015 WL 9854939, at *12.  The Special Master correctly attributed more weight to the evidence contained in the medical records than to later filed submissions and affidavits by the parents of the child.  Because of their impartial nature, medical records strongly "warrant consideration as trustworthy evidence." *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Turning to the expert reports, the Special Master found the report submitted by Dr. Wiznitzer for the Secretary to be highly credible and Dr. Levin's report

submitted for the Canutos to be not credible, for several reasons. First, Dr. Wiznitzer's training and specialization make him more qualified to offer an expert opinion in this matter. Dr. Wiznitzer is a specialist in pediatric neurology, with an extensive understanding of autism and other pediatric neurodevelopmental disorders. Dr. Levin, on the other hand, is a specialist in oncology and hematology, and has comparatively little experience with such disorders.

Second, Dr. Levin's expert report presents a medical theory that the Special Master found to be "largely, if not entirely, unsupported speculation." *Canuto*, 2015 WL 9854939, at *21. Dr. Levin's theory of causation was based on the general rise of autism rates in the United States, his unsubstantiated claim that the DTP vaccine "has been related to later development of autism," and his claim that the DTP vaccine "caused fever, seizures and encephalitis in this case"—a claim that, once again, contradicts the available medical records. *Canuto*, 2015 WL 9854939, at *15. Dr. Levin failed to produce any scientific support for the notion that the DTP vaccine can cause autism generally, let alone evidence that it actually caused autism in D.A.C.'s specific case.

Finally, the Special Master noted that the Levin report "was mistaken on the critical point of identifying the type of vaccinations that DAC actually received," misidentifying one of the vaccines received in 2001 as a DTP vaccine when it was in fact a DTaP vaccine—a vaccine which his own report describes as much safer than the DTP vaccine. *Canuto*, 2015 WL 9854939, at *21–22. Moreover, the Special Master observed that Dr. Levin's summary of D.A.C.'s medical history seemed to "link the onset of" fever, which Dr. Levin purports as the root cause of D.A.C.'s autism, "to D.A.C.'s Hib vaccination of March 30, 2001, and *not* to any of his DTP or DTaP vaccinations." *Canuto*, 2015 WL 9854939, at *23 (emphasis added).

The Special Master also noted that, even if Dr. Levin's underlying medical theories were taken at face value, he did not "offer any explanation for how such a reaction"—like the one D.A.C. allegedly experienced following the Hib vaccination—"could ultimately lead to *autism*." *Canuto*, 2015 WL 9854939, at \*22. The Special Master thus ultimately concluded that Dr. Levin's opinion was "wholly unpersuasive regarding every element necessary to proving causation-in-fact." *Canuto*, 2015 WL 9854939, at \*21.

The Canutos' Informal Brief alleges that the Special Master and Court of Federal Claims failed to consider evidence regarding the "regulation of brain ions." But Dr. Levin's report contained no reference to brain ions. In addition, though the Special Master did not specifically mention brain ions in his decision, he did expressly refer to the multiple and voluminous submissions proffered by the Canutos, describe his search through those submissions, and note his subsequent finding that their theories of causation—including necessarily those relating to "brain ions"—"do not constitute a medical or expert opinion" and "therefore have very little evidentiary value." *Canuto*, 2015 WL 9854939, at \*17.

To succeed under the *Althen* test, the Canutos must provide by preponderant evidence a medical theory that causally connects the vaccination and the injury, a logical sequence of cause and effect that shows that the vaccination was the reason for the injury, and a proximate temporal relationship between the vaccination and the injury. *Althen*, 418 F.3d at 1278. The evidence that the Canutos presented is contradicted by the medical record, internally inconsistent, and fails to fully address causation. The Special Master, considering that evidence, drew plausible inferences and articulated a rational basis under *Althen* to deny the Canutos' claim.

CONCLUSION

Because the Special Master applied the appropriate legal framework and evidentiary standards to his analysis, and because his factual findings and weighing of evidence demonstrated plausible inferences and rationality, we discern no error in the United States Court of Federal Claims' judgment that the Special Master did not rule arbitrarily or capriciously in denying the Canutos' claim. *See* 42 U.S.C. § 300aa-13(a)(1)(A); *Hines*, 940 F.2d at 1528.

**AFFIRMED**